## UNITED RENDERING CO. v. LEWIS et al.

No. 21869.    Opinion Filed Jan. 19, 1932.

Hayes, Richardson, Shartel, Gilliland & Jordan, for petitioners.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondents.

CLARK, V. C. J. This is an original action in this court to review an award of the State Industrial Commission made and entered on the 4th day of October, 1930, in favor of George Lewis, respondent herein, wherein the Commission found that he was, on January 3, 1930, in the employment of United Rendering Company, petitioner herein, and that on said 3rd day of January, 1930, he sustained an accidental personal injury arising out of and in the course of his employment, and as a result he was temporarily totally disabled from the date of the injury to May 22, 1930; and as a further result of said injury he sustained 40 per cent. permanent partial disability to his left hand.

The record discloses that it was admitted by the United Rendering Company, petitioner herein, and also the insurance carrier, that respondent herein was working for the United Rendering Company and received an accidental injury on the 3rd day of January, 1930, and that his employment was covered by the Workmen's Compensation Act. (Comp. St. 1921, s. 7282, et seq., as amended.)

Petitioners under their first proposition contend:

"The evidence conclusively shows that claimant's disability to the finger was caused by his failure to avail himself of reasonable remedial measures which would have resulted in a practically normal finger; therefore, the respondent and its insurance carrier are not liable for any disability occasioned by such willful failure to accept reasonable medical treatment."

The record discloses that respondent herein was injured by cutting his middle finger while skinning hogs; that he worked for a short while, and it hurt so badly that he went to the doctor and was treated, and resumed work and worked about a day and a half, and had to quit. That he continued his treatments by the doctors, until he was advised to go to the hospital; that the doctor desired to break his hand down, and then he could report back in about two months and then he could go to work in about two months, and he refused to permit them to break his hand down and turn him loose. The respondent herein testified that he never missed any treatments except on one day.

There is testimony in the record to the effect that if the claimant, respondent herein, had permitted the doctor to break down his hand nothing would have been accomplished so far as decreasing claimant's disability, and that it would only help the looks of the hand.

Dr. R. W. Motley testified as follows:

"Q. You spoke about breaking the hand down. Would that bring back the tissue of the hand? A. That would be to help the ankylosis. Q. Well, if that was done, could he return to manual labor as before? A. No. Q. Then, iff that was done could he do manual labor at all? A. No, I don't think so. Q. If that hand was broken down, would he still have 70 per cent. disability, in your opinion? A. In my judgment, I think so. Q. When you talk about 'breaking down,' do you have reference to the ankylosis of just one finger? A. Yes. Q. That would not help the muscles of the hand as a result of the blood poison? A. No, but I believe it would help the looks. * * * Q. In other words—to get you clear, to break the hand down would not have any—would not enable the man to do manual labor? A. It would help the looks, is all."

The record further discloses that claimant was advised to go to work by the doctor and that he followed the directions and tried to work, but that his hand swelled.

The question of whether or not the respondent refused to avail himself of reasonable remedial measures, as well as the question of whether or not the refusal of respondent to submit to a tendered surgical operation is unreasonable, are questions of fact to be determined by the Commission from all the facts and circumstances appearing at the trial, including the testimony of respondent, as well as those of medical experts, and where there is any competent evidence reasonably tending to support such finding, it will not be disturbed by this court on review.

In the case at bar, the Commission found that the respondent was temporarily totally disabled from the date of the injury until May 22, 1930, and also sustained 40 per cent. permanent partial disability to his left hand, and thereby necessarily found against the contention of petitioners on the question that the respondent's disability to the finger was caused by his failure to avail himself of reasonable remedial measures.

We are of the opinion that there was competent evidence reasonably tending to support such finding.

The petitioners under the second proposition contend:

"The injury in question being to a specific member of the body, for which compensation has been provided, it was error for the Commission to award compensation predicated upon disability to the entire hand when the second middle finger only was involved, and the maximum amount of compensation allowable therefor being only 30 weeks, the order and award of the Commission allowing 80

weeks' compensation is excessive and void.'

The respondent testified that he was not able to work with his hand to speak of; that the best he cam do is to get hold of a broom. That the joints are sore.

Dr. R. W. Motley testified that respondent herein will never be able to do ordinary manual labor with his hand; that the per cent. of disability to the hand would run fully 70 per cent., and further testified:

"Q. The claimant testified that the whole hand was infected—the muscles and tissues in the hand were infected and swollen up. Would you say that that condition accounts for the destruction of tissue in the hand, and the involvement of those tendons in the hand make him unable to close the hand? A. It would. Q. Not just the middle finger, but the whole. hand? A. Due to the contact with the implates of the nerve— the implates are under the end of the finger. Yes. Q. The counsel for respondent asked you about the finger; I am asking about the hand. A. I answered that, about tampering with the branches of a tree. Q. Does that affect all of the hand, or just the finger? A. It affects the hand so far as the tissues is over the back of the whole hand. * * * Q. Well, the disability you testified was to the entire hand? A. Yes. * * * Q. Combining the hand and finger? A. The flexor muscle controlling the entire hand seemed to be affected. Q. I will ask if the flexor muscle of each finger is not separate and distinct? A. That's true. Q. And where the flexor muscle of one finger is affected, that *does not involve the other fingers, does it?* A. I made my examination and I found that the entire hand was abnormal. I merely based my diagnosis on the condition of the second finger."

Without quoting further testimony, we find that there was competent evidence admitted showing that as a result of the injury to respondent's middle finger there was an infection which involved the whole hand, and supporting the award of the Commission.

For the reasons stated, the judgment and award of the State Industrial Commission is affirmed.

HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and RILEY, J., absent.